ALLDAY et al. v. CAGE.

(Court of Civil Appeals of Texas. Ft. Worth. May 4, 1912.)

1. WILLS (§ 98*)—CONSTRUCTION—WRITINGS ANNEXED TO WILL.

To make an instrument not formally incorporated in a duly executed will a part thereof, it must be so clearly identified as to preclude the reasonable probability of mistake as to the instrument referred to.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 234, 235; Dec. Dig. § 98.*]

2. WILLS (§ 98*)—CONSTRUCTION—WRITINGS ANNEXED TO WILL.

A separate contract to which the maker of a will was a party was sufficiently incorporated in the will by a provision directing the carrying out of an agreement identified by a recital of the parties thereto, its date, and by the name of the notary public who acknowledged it.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 234, 235; Dec. Dig. § 98.*]

3. WILLS (§ 98*)—CONSTRUCTION—WRITINGS ANNEXED TO WILL.

The requirement that an extraneous instrument must be in existence at the time of the execution of a will, that it may be incorporated therein, is one of identity and certainty, so that though a will providing for the carrying out of a contract, to which the testator was a party, was executed by the testator at a time when the contract was only reduced to writing and not yet signed, the incorporation in the will was complete.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 234, 235; Dec. Dig. § 98.*]

4. WILLS (§ 215*)—CONSTRUCTION—PROBATE —SCOPE.

As a proceeding to probate a will is not an action to construe or annul its provisions, it cannot be objected therein that a contract incorporated in the instrument is contradictory of its terms and otherwise void.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 522, 523; Dec. Dig. § 215.*]

5. WITNESSES (§ 364*) — IMPEACHMENT—INTEREST OF WITNESS.

Where, in an action to contest a will, one of the contestants had testified to material facts in support of the contestants' claims, she was properly cross-examined as to whether she had an agreement with the other contestants, whereby she was to receive certain benefits in case the probate of the will was defeated.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1179, 1180; Dec. Dig. § 364.*]

6. WILLS (§ 360*) — CONTEST — REVIEW—OBJECTION BELOW—INSTRUCTIONS—REQUEST— NECESSITY.

A party to a will contest cannot complain of the failure of the trial court to submit certain issues, or phases of issues, presented, where there was no request for the appropriate instructions.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 825; Dec. Dig. § 360.*]

7. WILLS (§ 155*) — "UNDUE INFLUENCE".— NATURE.

"Undue influence," which would avoid a will, must be such as would destroy the liberty and free agency of the testator in the disposition of his property.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 375–381; Dec. Dig. § 155.*

For other definitions, see Words and Phrases, vol. 8, pp. 7166–7172; vol. 8, pp. 7823, 7824.]

8. APPEAL AND ERROR (§ 882*)—INVITED ERROR—INSTRUCTIONS.

Parties to a will contest cannot complain of an instruction given, which follows one requested by them.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3591–3610; Dec. Dig. § 882.*]

9. TRIAL (§ 194*)—INSTRUCTIONS—PROVINCE OF COURT AND JURY.

Where, in an action to contest a will, in which there was incorporated a separate and extraneous contract, a charge, that ordinarily less mental capacity is required to execute a will than to make a contract, was properly refused as on the weight of the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 439–441, 446–454, 456–466; Dec. Dig. § 194.*]

Appeal from District Court, Erath County; J. H. Arnold, Judge.

Application by B. C. Cage, for the probate of the will of M. J. Crow, contested by Rebecca Allday and others. Probate granted, and contestants appeal. Affirmed.

Martin & Johnson and A. P. Young, all of Stephenville, and O'Neal & Allday, of Atlanta, for appellants. Chandler & Pannill, of Stephenville, for appellee John Tarlton College. J. C. George and Marshall Ferguson, both of Stephenville, for appellee Cage.

---

SPEER, J. This is a proceeding instituted by B. C. Cage, as executor of the last will and testament of Mrs. M. J. Crow, deceased, for the probate of such will in the county court of Erath county. A contest was filed by Rebecca Allday and a number of others; but the will was admitted to probate both in the county court and in the district court to which the case was appealed. From the final judgment of the district court the contestants prosecute this appeal.

The will of Mrs. M. J. Crow, deceased, contained the following provision: "Item Fourteenth. I expressly will, declare and direct that the instrument between me and J. H. Cage, John Cage, Day Cage, Jessie White and F. S. White, who with me constitute the firm of Cage and Crow, shall be in all respects adhered to, observed and carried out. Which agreement is dated September 14th, 1910, and executed by myself and above-named parties, and acknowledged by us before P. L. Pittman, a notary public in and for Erath county, Texas." On the trial the district court admitted in evidence, as a part of the will sought to be incorporated therein in pursuance of item fourteenth, the following writing:

"The State of Texas, County of Erath. This memorandum of agreement made and entered into this the day and year last herein written by and between J. H. Cage, Day Cage, John Cage, Jessie White, joined pro forma by her husband F. S. White and M. J. Crow, a widow, witnesseth: That whereas the parties hereinbefore named constitute all the members of the firm Cage & Crow, Bankers, now engaged in a general banking business in the city of Stephenville, Tex., and realizing that in the event of the death of any one of us this partnership would be by operation of law dissolved unless otherwise agreed among us, and desiring to protect our interests and the patrons of our bank we hereby agree and covenant one with another that in the event of the death of any one of us that the firm of Cage & Crow shall not be by that event dissolved but shall continue in force and operation as it exists at the death of any one of us for a period of five years, and any deposit or other interest owned or held by any of us in the firm of Cage & Crow, Bankers, at the date of our death shall remain in the custody and control of the surviving members of the firm of Cage & Crow, Bankers, from the date of such death for a period of five years and at the expiration of five years from the date of the death of either one of us all stock and interest held or deposit owned by the party dying shall be delivered by the surviving members of the firm to the heirs of the party dying, or his or her legal representatives. And we by this instrument expressly annul the agreement and contract entered into by and between us of date November 10th, 1905. Witness our hands this 14th day of September, 1910. John Cage. J. H. Cage. Day Cage. M. J. Crow. F. S. White. Jessie White.

"The State of Texas, County of Erath. Before me, the undersigned authority, on this day personally appeared J. H. Cage, Day Cage, John Cage, Jessie White and her husband, F. S. White, and M. J. Crow, a widow, known to me to be the persons whose names are subscribed to the foregoing instrument, and acknowledged to me that they executed the same for the purposes and consideration therein expressed. And the said Jessie White, wife of the said F. S. White, having been examined by me privily and apart from her husband, and having the same by me fully explained to her, she the said Jessie White acknowledged such instrument to be her act and deed, and declared that she had willingly signed the same for the purposes and consideration therein expressed and that she did not wish to retract it. Given under my hand and seal of office this the 14th day of September, A. D. 1910. [Seal] P. L. Pittman, Notary Public, Erath County, Tex."

[1-3] To the admission in evidence of this contract appellants interposed a number of objections, most of which form the basis of appropriate assignments of error in this court. First, it is objected that the contract is not sufficiently described in the will. It is of course true that an instrument not formally incorporated in a duly executed will, in order to be made a part of such will, must be so clearly identified as to preclude all reasonable probability of mistake as to the instrument referred to. We think the description contained in the will sufficiently meets this requirement. Another objection, though not next in the order in which they were made, is that the contract was not signed by the testatrix at the time she executed the will and was not, therefore, in existence at the time the will was executed The evidence shows that the testatrix executed the will and contract simultaneously, in point of fact attaching her signature to the will before signing the contract. The rule requiring that for an extraneous instrument to be made a part of a will it must be in existence at the time of the execution of the will is one of identity and certainty, and is met, we think, when the terms of the instrument are actually reduced to writing, and it is not required that such instrument be subscribed, acknowledged, or proved. In other words, such instrument derives its force, not by virtue of the rules of contract or other executed instruments, but by virtue of the execution of the will by the terms of which the language thus made certain is incorporated therein. It is a mistake, we think, to require more than that the writing or paper be in existence as contradistinguished from the conception of an executed instrument. It is definiteness only that is aimed at and not imposed contractual or other legal obligations arising by virtue of an executed in-

strument. Heidenheimer v. Bauman, 84 Tex. 174, 19 S. W. 382, 31 Am. St. Rep. 29; Tonnele v. Rall, 4 N. Y. 140; Bullock v. Bullock, 17 N. C. 307.

[4] Still other objections are made, as, for instance, the contract is contradictory of the terms of the will and otherwise void; but these objections are invalid in this proceeding to probate the will, since this is not an action to construe or annul the provisions of the will. Prather v. McClelland, 76 Tex. 574, 13 S. W. 543. None of the objections to the evidence is well taken, and all assignments based on its admission are overruled.

[5] Mrs. Bamah Young, one of the contestants, was required to testify over the objection of the contestants that, in the event the will then offered for probate should be defeated, she had an agreement with the other contestants whereby she was to receive certain benefits. This was a proper exercise of the right of cross-examination, since the witness had testified to material facts supporting contestants' pleas.

The principal grounds of contest pleaded were want of testamentary capacity, fraud, and undue influence. The court thus submitted the issues:

"Fourth. In the first place, you are instructed that if the instrument exhibited in evidence, of date September 14, 1910, purporting to be the last will of Mrs. M. J. Crow, was in writing and was read over to Mrs. M. J. Crow, and that thereafter she signed it, and that it was attested by J. C. George and Marshall Ferguson, and that they, the said J. C. George and Marshall Ferguson, and each of them, were at said time creditable witnesses, above the age of fourteen years, and that they, the said J. C. George and Marshall Ferguson, subscribed their names to said instrument in the presence of Mrs. M. J. Crow, and in the presence of each other, after she had signed the same, and that at said time Mrs. M. J. Crow was over the age of 21 years and was of sound mind, that is, that the said Mrs. M. J. Crow had capacity to know and understand what she was doing and the effect of her act at the time she executed said paper; and if you further believe from the evidence that said paper was and is her last will; and if you further believe and find that said Mrs. M. J. Crow is now dead, and that she died in Erath county, Tex., where she resided at the time of her death, then you will find for the proponent and for the probate of said will, unless you find for the contestants under subsequent instructions herein."

"Sixth. On the other hand, gentlemen, although you may believe from the evidence in this case that said paper, dated September 14, 1910, and purporting to be the last will of Mrs. M. J. Crow, and was executed by her with the formalities and solemnities and under the circumstances required by law to make it a valid will, as set out in the last preceding paragraph of this charge, still if you do not believe from the evidence that Mrs. M. J. Crow at the time of the execution of said will was of sound mind, that is, if you do not believe from the evidence that she had the capacity to know and understand what she was doing and the effect of her act at the time she executed said paper, then you will find for the contestants, and against the probate of said will.

"Seventh. Moreover, gentlemen, if you believe from the evidence in this case that at the time Mrs. M. J. Crow executed the paper dated September 14, 1910, purporting to be her last will, and her mind was, either from sickness, disease, age, bodily and mentally decay, or over-weaning confidence, subject to the domination and control of her attorney in fact and business manager, J. H. Cage, or her attorney at law, Marshall Ferguson, if he was her attorney, or both of them, and that they or either of them exercised such power and control over her mind and will in the disposition of her property by said paper as to destroy her liberty and free agency and to cause such disposition of her property to be made to suit the will and wishes of said J. H. Cage or Marshall Ferguson, or both of them, and not her own will and wishes, then and in that event also you will find for the contestants.

"Eighth. On the other hand, gentlemen, although you may believe from the evidence that J. H. Cage or Marshall Ferguson by reason of the position and relation which they occupied to Mrs. M. J. Crow's estate of business, or for any other reason, had acquired an influence over her which they, or either of them, exerted in having her dispose of her property, in said will, still if this was done in a fair and reasonable manner, without deception or fraud on their part, then such influence would not avoid the will unless it went to the extent that it overreached and destroyed the free agency and will power of said Mrs. M. J. Crow, and unless you believe it went to such extent (if any influence there was), then the contestants cannot defeat said will nor its probate on the grounds of undue influence.

"Ninth. If under the law and the evidence you should find for the preponent and the probate of said will dated September 14, 1910, you will next consider whether or not the memorandum of agreement, dated September 14, 1910, exhibited in evidence, shall be admitted to probate in connection with and as a part of said will, and upon this issue you are instructed as follows: If you believe from the evidence in this case that the memorandum of agreement above mentioned is the instrument referred to in item 14 of the will, and that it had been reduced to writing prior to the time Mrs. Crow executed the will, and that it had been read over to Mrs. Crow, and that she understood it at the time she executed said will; and you further believe from the evidence that prior to said time said instrument had been

executed, by John Cage, J. H. Cage, F. S. White, and Jessie White, prior to the time it was executed by Mrs. M. J. Crow, and that at the time she signed the will she also signed said memorandum of agreement and acknowledged the same, then you will find for the proponent that said contract should be probated along with said will.

"Tenth. If, on the other hand, you do not believe from the evidence that the instrument described in the last preceding paragraph of this charge is the instrument referred to by Mrs. Crow in item 14 of the will, and herein exhibited in evidence, or if you do not believe that said instrument at the time Mrs. Crow signed the will exhibited in evidence was in writing, and had been signed by all the parties above named, except Mrs. Crow, then you will find for the contestants that the contract shall not be probated as a part of the will."

[6] By the eleventh, twelfth, thirteenth, and fourteenth assignments complaint is made that the court erred in not submitting certain issues or phases of these issues; but these can in no event be sustained because the rule is that such an error is one of omission only, and the duty devolves upon the injured party to request appropriate instructions.

[7, 8] The court's charge upon undue influence is criticised as going too far in requiring such influence to destroy her liberty or free agency in the disposition of her property. We do not think so; but, if it does, it follows the requested charge presented by contestants which goes quite as far in that direction.

[9] Special charge No. 1, wherein the jury were instructed "that ordinarily less mental capacity is required to enable the testatrix to make a will than for the same person to make a contract," was properly refused because the same was on the weight of the evidence. It may or may not require less mental capacity to make a will than a contract, depending, of course, upon the terms and comprehensiveness of those instruments, the amount of property involved in each, and a variety of other supposable circumstances.

We have carefully examined every assignment of error and as carefully read the evidence relied upon by contestants, and are of the opinion the case was properly submitted, and the verdict and judgment are supported by the testimony. All assignments are overruled, and the judgment is affirmed.